IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Joan Ravenna, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 17 cv 05685 |
| | ) | |
| Village of Skokie, Sergeant Liebau, | ) | Judge: Thomas M. Durkin |
| Commander Libit, Investigator  J.M. | ) | Magistrate: Mary M. Rowland |
| Roden, and Officer J.R. Veenhuis, | ) | |
| | ) | |
| Defendants. | ) | |

## NOTICE OF FILING

TO: Kenneth N. Flaxman
Joel A. Flaxman
Kenneth N. Flaxman, P.C.
200 South Michigan Avenue, Ste. 201
Chicago, Illinois 60604
(312) 427-3200

Laura L. Scarry
DeAno & Scarry, LLC
53 West Jackson Boulevard, Ste. 1610
Chicago, Illinois 60604
(630) 690-2800

**PLEASE TAKE NOTICE** that on **May 14, 2019,** the following motion attached hereto was filed with the Northern District of Illinois:

**DEFENDANT'S, VILLAGE OF SKOKIE'S, LOCAL RULE 56.1 STATEMENT OF FACTS**

## CERTIFICATE OF SERVICE

I hereby certify that on **May 14, 2019**, I provided service to the person or persons listed above and to all counsel of record by the following means: **CM/ECF notification**

Signature: /s/ James G. McCarthy

James G. McCarthy
Village of Skokie
5127 Oakton Street
Skokie, Illinois 60077
(847) 933-8270
Attorney No: 6226956

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| **Joan Ravenna,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **17 cv 05685** |
| | ) | |
| **Village of Skokie, Sergeant Liebau,** | ) | **Judge: Thomas M. Durkin** |
| **Commander Libit, Investigator  J.M.** | ) | **Magistrate: Mary M. Rowland** |
| **Roden, and Officer J.R. Veenhuis,** | ) | |
| | ) | |
| **Defendants.** | ) | |

### **DEFENDANT'S, VILLAGE OF SKOKIE'S, LOCAL RULE 56.1 STATEMENT OF FACTS**

Defendant, Village of Skokie (hereinafter, "Skokie") by and through its attorneys, Michael M. Lorge and James G. McCarthy, and pursuant to Local Rule 56.1, hereby submits its Rule 56.1 Statement of Facts. Skokie further states that its Rule 56.1 Statement of Facts are identical to the Statement of Uncontested Facts which Skokie filed in its Motion for Summary Judgment on April 13, 2019 (Dkt#105, pp. iii-vii). The only difference is Skokie's inadvertent omission to properly number its Statement of Facts in its Motion for Summary Judgment.

1. The Plaintiff, born ▓▓▓▓▓▓▓, has resided at ▓▓▓▓▓▓▓ in Skokie, Illinois for over forty years (Deposition of Joan Ravenna, hereinafter Exhibit "D", p. 22). Between July of 2014 and November of 2015, the Plaintiff interacted with the Skokie Police Department over 100 times (Ex. D, pp. 65, 116).

2. The majority of these interactions were calls related to her suspicions that her neighbor, Tim Girard, had been breaking and entering into her home, stealing and damaging her belongings (Ex. D, pp. 51, 117-118), and abusing her dog (Ex. D, pp. 51-55). The Plaintiff testified that, on each and every occasion where she engaged the Skokie Police Department regarding these concerns, they responded in some capacity (Ex. D, p. 50).

3. The Plaintiff testified that her health is a complicated thing (Ex. D, p. 215), and explained that her fibromyalgia, first diagnosed in 1995 (Ex. D, pp. 11-12), has

resulted in widespread and persistent pain all over her body at any given time (Ex. D, p. 11).

4. The Plaintiff was taking 13 different prescription medications during this time to address a variety of medical conditions, including fibromyalgia (Deposition of Joan Ravenna, 5th Exhibit, hereinafter Exhibit "E", p.1).

5. While the Plaintiff does experience physical pain and subsequent difficulties, she testified that she has never been declared disabled for mental or psychological reasons (Ex. D, p. 215).

6. On the night of August 6, 2015, the Plaintiff was arrested at her home at approximately 2:20 AM (Ex. B, p. 905). The Plaintiff testified that, because she normally took her medication at 9:30 PM, she would have already taken it by the time she was arrested that night (Ex. D at 216-217).

7. Chief Anthony Scarpelli has worked for the Village of Skokie for approximately thirty-seven years, and rose to the rank of Police Chief in 2011 (Deposition of Chief Anthony Scarpelli, hereinafter Exhibit "F", p. 5). His duties as the Chief of Police include reviewing and ultimately approving policy revisions for the Police Department (Ex. F, p. 7).

8. Chief Scarpelli testified that, in August of 2015, there were no procedural differences for arresting people with disabilities compared to people without disabilities (Ex. F, p. 35), and that the protections of the ADA did not apply in cases of arresting, booking, or holding a suspect (Ex. F, p. 34). Chief Scarpelli also testified that there absolutely was not any express policy or widespread practice to make warrantless arrests by luring residents out of their homes (Ex. F, p. 36).

9. Chief Scarpelli first met the Plaintiff approximately 23 years ago when she was serving as a commissioner on the Fire and Police Commission in Skokie (Ex. F, p. 6).

10. Chief Scarpelli interacted with the Plaintiff twice in the months prior to her arrest on August 6, 2015. Because he is not a clinician, he would not speculate as to whether the Plaintiff was delusional (Ex. F, p. 7).

11. Chief Scarpelli testified that the Plaintiff harbored false beliefs about her neighbor, Tim Girard, but that he would not assume why. The Plaintiff could have been delusional, drunk, under the influence of a narcotic, or be experiencing some other unknown circumstances (Ex. F, p. 19).

12. Commander Robert Libit has worked for the Village of Skokie for approximately twenty-six years, and rose to the rank of Commander in 2014 (Deposition of Commander Robert Libit, hereinafter Exhibit "G", p. 4).
13. Commander Libit testified that he had been on several calls to the Plaintiff's residence, including on the night of her arrest, August 6, 2015 (Ex. G, p. 8). Commander Libit testified that, at the time of the Plaintiff's arrest, there was not a different procedure for arresting a person experiencing delusions than for arresting someone who does not experience delusions (Ex. G, p. 21).
14. Commander Libit did not know what the Plaintiff's state of mind was at the time of her arrest (Ex. G, p. 20).
15. Commander Libit testified that, at the time of her arrest, the Plaintiff refused to accompany the Skokie Police to the Police Station (Ex. G, p. 13-14). The Plaintiff flailed her arms (Ex. G, p. 14) and dropped her weight to avoid being handcuffed by officers (Ex. G, p. 23).
16. Commander Libit testified that, after Sergeant Liebau went into the Plaintiff's residence to retrieve her requested medication, Sergeant Liebau could not sort of the prescriptions. Sergeant Liebau then offered to take the Plaintiff to the hospital to retrieve her necessary medications, which the Plaintiff refused (Ex. G, p. 17-18).
17. Sergeant Michael Liebau has worked for the Village of Skokie for approximately twenty-five years, and rose to the rank of Sergeant in 2014 (Deposition of Sergeant Michael Liebau, hereinafter Exhibit "H", p. 4).
18. Sergeant Liebau testified that he had been on the call to the Plaintiff's house on the night of her arrest (Ex. H, p. 9). Sergeant Liebau testified that, at the time the Plaintiff was informed she was being arrested, she verbally objected and clearly stated she would not go to the police station (Ex. H, p. 51).
19. The police officers at the scene did everything they could to avoid a physical confrontation with the Plaintiff, and did not intend to put handcuffs on her until she began actively resisting arrest (Ex. H, p. 52-53). Sergeant Liebau testified that the Plaintiff's active resistance and propensity to cause harm to herself or the officers necessitated her being handcuffed behind her back (Ex. H, p. 70).
20. The Plaintiff complained that she had a prior wrist injury that caused her pain during the arrest (Ex. H, p. 71), and once she calmed down and stopped resisting Sergeant

Liebau advised that her handcuffs be moved to the front of her body to transport her to the police station (Ex. H, p. 70).

21. Sergeant Liebau testified that the police officers offered multiple times during the Plaintiff's arrest for her to be escorted to the hospital, and that she refused every time (Ex. H, p. 69).
22. Officer John Veenhuis has worked for the Village of Skokie for approximately five years (Deposition of Office John Veenhuis, hereinafter Exhibit "I", p. 4). Officer Veenhuis testified that he did not form an opinion about the Plaintiff's mental health during his interactions with her (Ex. I, pp. 14-15).
23. Officer Veenhuis testified that he was present on the night of the Plaintiff's arrest (Ex. I, p. 6), and that the Plaintiff was only asked to place her hands behind her back once she stated she would not be arrested (Ex. I, p. 66).
24. In the supplemental report generated by Officer Veenhuis following the Plaintiff's arrest, he wrote that the Plaintiff resisted arrest by pulling her hands away from the officers, twisting and jerking her body to avoid being handcuffed, and dropping her weight to the ground (Ex. C, p. 913).
25. Officer Veenhuis also reported that he placed the Plaintiff in two pairs of handcuffs to accommodate her and relieve the pain she complained of (Ex. C, p. 913). On the night of the Plaintiff's arrest, she was offered medical treatment several times both at her residence and at the police station (Ex. I, p. 52).
26. Officer Jacqueline Roden worked for the Village of Skokie for approximately three years before becoming an officer in the City of Evanston (Deposition of Officer Jacqueline Roden, hereinafter Exhibit "J", p. 4). Officer Roden interacted with the Plaintiff before her arrest on August 6, 2015, and did not form an opinion as to whether the Plaintiff was delusional (Ex. J, p. 8).
27. Officer Roden testified that she was present during the Plaintiff's arrest, during which force was exerted because the Plaintiff was resisting the officers (Ex. J, p. 6). The Plaintiff resisted arrest by pulling her arms away from Officer Roden and Officer Veenhuis, dropping her weight to avoid being handcuffed and taken into custody, and stopping her feet as she was escorted to the police vehicle (Ex. J, pp. 6-7).
28. Officer Roden testified that, when the Plaintiff was put in handcuffs behind her back, she complained of pain, at which time the officers added a second pair of handcuffs to allow for more slack and the Plaintiff to relax her shoulders (Ex. J, p. 20).

29. When the Plaintiff started cooperating with officers, Officer Roden switched her handcuffs to be in front of her body to put her in the police vehicle (Ex. J, pp. 19-20). Officer Roden testified that the police officers offered the Plaintiff medical attention upon her arrival to the police station (Ex. J, pp. 21-22).

Respectfully submitted,

The Village of Skokie

By one of its attorneys

_____
James G. McCarthy

#34205
James G. McCarthy
Village of Skokie
Assistant Corporation Counsel
5127 Oakton Street
Skokie, Illinois 60077
(847) 933-8270