IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Joan Ravenna, | ) |
| *Plaintiff* | ) ) ) ) No. 17-cv-5685 |
| -*vs*- | ) ) (*Judge Durkin*) |
| Village of Skokie, et al., | ) ) |
| *Defendants.* | ) |

## PLAINTIFF'S AMENDED MEMORANDUM IN OPPOSITION TO DEFENDANT SKOKIE'S MOTION FOR SUMMARY JUDGMENT

Plaintiff and defendant Village of Skokie have cross-moved for summary judgment on plaintiff's claims under the Americans with Disabilities Act and the Rehabilitation Act. Plaintiff filed a separate motion, a Local Rule 56.1 Statement, and a supporting memorandum. (ECF Nos. 102-104.) Skokie filed a single document (ECF No. 105) that includes a motion, memorandum, and statement of undisputed facts in narrative form.

Skokie failed to support its motion for summary judgment with statements of material facts in the "short numbered paragraphs" required by Local Rule 56.1(a). (ECF No. 105 at 3-8.) After plaintiff pointed out this disregard of the local rule in her response, ECF No. 108, the Court permitted Skokie to file a statement of undisputed facts that attempts to comply with the numbered paragraphs required by Local Rule 56.1. The Court directed Skokie to pay plaintiff's counsel for the time involved in responding to the statement. Plaintiff has responded to the Skokie's statement of facts, ECF No. 115, and files this amended memorandum to incorporate her response to defendant's factual presentation.

## I. The Record Viewed in the Light Most Favorable to Plaintiff

Virtually all of the facts relevant to plaintiff's ADA and RA claims are not disputed. Plaintiff set out those facts in the Local Rule 56.1 Statement she filed with her motion for summary judgment. (ECF No. 103.)

Skokie relies on a variety of immaterial factual contentions in its cross-motion. For example, Skokie asks the Court to find that it is undisputed that plaintiff resisted arrest (Skokie Rule 56.1 Statement, ¶¶ 15, 18-19, 20, 23-24, 27, 29), had taken her prescription medication before the arrest (Skokie Rule 56.1 Statement, ¶ 6), and declined offers to secure medical attention (Skokie Rule 56.1 Statement, ¶¶ 21, 25, 29). None of these factual disputes are material to plaintiff's ADA and RA claims against the Village of Skokie. Moreover, plaintiff disputes each of these contentions with pinpoint record citations showing the dispute.

On Skokie's cross motion, "the Court draws inferences in favor of the party against whom the motion under consideration is made." *Temperature Service Company, Inc. v. Acuity*, 2018 WL 1378345, at *3 (N.D. Ill. March 15, 2018) (citing *Siliven v. Ind. Dep't of Child Servs.*, 635 F.3d 921, 925 (7th Cir. 2011).)

### A. Skokie Perceived Plaintiff as Delusional and in Need of Medical Treatment

The plaintiff Joan Ravenna started to complain to the Skokie, Illinois police department about her neighbor Tim in 2014. (Plaintiff's Additional Facts, ¶ 1.) Plaintiff repeated her complaints for more than a year, causing the officers who responded to conclude that plaintiff was delusional and required medical attention. (Plaintiff's Additional Facts, ¶¶ 2-3.)

Police Chief Scarpelli visited plaintiff at her home with the Skokie Department social worker, Julie Kim, on May 22, 2015. (Plaintiff's Additional Facts, ¶ 4.) Chief Scarpelli unsuccessfully tried to convince plaintiff that she was delusional and should go to the emergency room. (*Id.*)

### B. The Pre-Arrest Events of August 2, 2015

Plaintiff's neighbor Tim complained to the Skokie police on August 2, 2015 that plaintiff had banged on windows and doors of his home and was standing in his yard "stating she wanted her sunglasses back, which she believes he stole." (Plaintiff's Additional Facts, ¶ 5.)

Skokie Police Officer Veenhuis, responding to Tim's complaint, viewed a video that Tim has given him, "asked him what had happened" (Plaintiff's Additional Facts, ¶ 6), and concluded that there was probable cause to arrest plaintiff for disorderly conduct. (*Id.*)

### C. The Arrest on August 6, 2015

Plaintiff made two complaints to the Skokie Police Department in the early morning hours of August 6, 2015. (Plaintiff's Additional Facts, ¶ 7.) She made her first call at 1:07 a.m., stating that her neighbor Tim had been in her house earlier that day. (*Id.*) Plaintiff made her second call at 1:34 a.m., stating that Tim was then on her back porch. (*Id.*)

The Skokie Police Department viewed these complaints as "unfounded … due to delusions." (Plaintiff's Additional Facts, ¶ 8.)

The Skokie Police Department dispatched officers Veenhuis and Roden to plaintiff's home at 1:37 a.m. on August 6, 2015. (Plaintiff's Additional Facts, ¶ 9.) Commander Libit and Sergeant Liebau also drove to the scene. (*Id.*)

Before traveling to plaintiff's home, Commander Libit learned from Officer Veenhuis that Veenhuis believed there was probable cause to arrest plaintiff for disorderly conduct that had allegedly occurred four days earlier, on August 2, 2015. (Plaintiff's Additional Facts, ¶ 10.) Libit instructed Veenhuis to check with the neighbor to see if "he still wants to sign a complaint." (Plaintiff's Additional Facts, ¶ 11.)

Veenhuis arrived at plaintiff's home at about 2:30 a.m. (Plaintiff's Additional Facts, ¶ 12), and checked with the neighbor, who stated that he wanted to sign complaints. (*Id.*)

Skokie Officers Roden and Veenhuis coaxed plaintiff out of her home. (Plaintiff's Additional Facts, ¶ 13.) Plaintiff told Roden and Veenhuis "what happened that night with her and Tim" (Plaintiff's Additional Facts, ¶ 14), and Veenhuis then told plaintiff that she was under arrest. (*Id.*)

### D. Intentional Discrimination

Commander Libit authorized Veenhuis to arrest plaintiff on a complaint of disorderly conduct that was four days old to enable the prosecutor to enable the prosecutor to order "a BCX, which is a behavioral analysis, to check her mental state." (Plaintiff's Additional Facts, ¶ 20.)

### E. Failure to Accommodate

Skokie Police Department's General Order F-80, which was in effect when plaintiff was arrested (Plaintiff's Additional Facts, ¶ 27), instructs police officers who are

"dealing with the mentally ill" (*id.*) to "not threaten the person with an arrest," but to "explain first that you need to talk to them further at the police station." (Plaintiff's Additional Facts, ¶ 28.) The officers who arrested plaintiff shortly after 2:30 a.m. on August 6, 2015 did not follow this procedure, but lured plaintiff out of her home and used force to place her under arrest. (Plaintiff's Additional Facts, ¶¶ 12-13, ¶¶ 15-18.)

Plaintiff was held overnight at the Skokie police station and was taken to court the next morning. (Plaintiff's Additional Facts, ¶ 21.) Plaintiff saw a judge at about 2:00 or 2:30 p.m. the next day (Plaintiff's Additional Facts, ¶ 22), and was released later that day. (*Id.*)

Commander Libit could have ordered that plaintiff be released on a personal recognizance bond. (Plaintiff's Additional Facts, ¶ 19.) Libit did not order plaintiff's release on a personal recognizance bond because, "it was my hope that she would go to a bond hearing and that the State's Attorneys would order a … BCX, which is a behavioral analysis, to check her mental state." (Plaintiff's Additional Facts, ¶ 20.)

Skokie could have accommodated plaintiff's disability by initiating a prosecution for the alleged disorderly conduct through a summons, 725 ILCS 5/107-11, or by a "notice to appear." 725 ILCS 5/107-12. (Plaintiff's Additional Facts, ¶ 23.) Skokie, however, does not employ either procedure. (Plaintiff's Additional Facts, ¶ 24.) The only procedure used by Skokie to initiate a misdemeanor prosecution is to make an arrest. (*Id.*)

### F. Deliberate Indifference

Skokie is not aware that the ADA requires law enforcement to modify how it approaches, interacts and communicates with individuals with mental illness. (Plaintiff's

Additional Facts, ¶ 25.) Skokie has a written policy for "dealing with the mentally ill" (Plaintiff's Additional Facts, ¶ 26), which instructs police officers to "not threaten the person with an arrest," but to "explain first that you need to talk to them further at the police station." (Plaintiff's Additional Facts, ¶ 27), The officers did not follow this policy in arresting plaintiff. (Plaintiff's Additional Facts, ¶¶ 12-13, ¶¶ 15-18.)

The official policy of defendant Village of Skokie is that neither the ADA nor the Rehabilitation Act apply to arresting, booking, or holding suspects. (Plaintiff's Additional Facts, ¶ 26.)

## II. Plaintiff's Claims

Plaintiff raised four claims against Skokie in her amended complaint; two claims remain for disposition. The Court followed *Woods v. City of Chicago*, 234 F.2d 979 (7th Cir. 2000) and dismissed plaintiff's challenge to Skokie's policy permitting warrantless arrests for misdemeanors committed outside the arresting officer's presence. (ECF No. 45.) Plaintiff recognizes that the evidence developed in discovery does not support her Fourth Amendment claim about "luring out of the house" to make a warrantless arrest and hereby abandons that claim.

Plaintiff's remaining claims against the Village of Skokie are brought under the Rehabilitation Act, 29 U.S.C. § 794(a), and the ADA, 28 U.S.C. § 12133. Plaintiff's constitutional claims against the individual officers are not at issue in the cross-motions for

summary judgment and are not material to plaintiff's RA and ADA claims against the Village of Skokie.[1]

### III. The ADA and the RA Apply to Arresting, Booking and Holding Suspects

Skokie asserts that neither the ADA nor the RA apply to "arresting, booking, and/or holding suspects."[2] (ECF No. 105 at 8-13.) Skokie seeks to rely on the decision of the Fifth Circuit in *Hainze v. Richards*, 207 F.3d 795 (5th Cir. 2000). (ECF No. 105 at 9-13.) Plaintiff explains below that Skokie misreads *Hainze.*

The United States Department of Justice, which is responsible for enforcement of the ADA, demonstrated that the ADA extends to "arresting, booking, and/or holding suspects" in its amicus brief in *City and County of San Francisco v. Sheehan,* U.S. Sup. Ct., No. 13-1412.[3] As the Department of Justice explained in that brief (at 10-11):

> Title II of the ADA, 42 U.S.C. §§ 12131-12165, prohibits a "public entity" from discriminating against a "qualified individual with a disability." 42 U.S.C. § 12132.
>
> \*\*\*
>
> Title II's antidiscrimination provision provides that no individual with a disability "shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. 12132. [footnote omitted] The statute defines "public entity" to include "any State or local government" and "any department, agency, spe-

---

[1] Plaintiff intends to proceed only on her excessive force claims against defendants Veenhuis and Rhoden and to dismiss defendants Libit and Liebeau. The facts material to the use of force during the arrest are in dispute: plaintiff contends that she did not resist arrest. (Plaintiff's Additional Facts, ¶¶ 23-25.)

Skokie is mistaken in its contrary assertion that plaintiff has dismissed her claims against all the individual defendants other than Veenhuis. (ECF No. 105 at 1.)

[2] The ADA and Section 504 of the Rehabilitation are "functionally identical." *P.F. by A.F. v. Taylor*, 914 F.3d 467, 471 (7th Cir. 2019), *citing Wagoner v. Lemmon*, 778 F.3d 586, 592 (7th Cir. 2015). Plaintiff will therefore limit her discussion to the ADA.

[3] https://www.justice.gov/sites/default/files/crt/legacy/2015/01/21/sheehansctbrief.pdf

cial purpose district, or other instrumentality of a State or States or local government." 42 U.S.C. 12131(1)(A) and (B).

By its plain terms, Title II applies to all governmental entities, including law enforcement agencies. Title II uses the term "any" in its ordinary "expansive" sense, i.e., "one or some indiscriminately of whatever kind." *United States v. Gonzales*, 520 U.S. 1, 5 (1997) (citation omitted). Moreover, the statutory text contains no "exception that could cast the coverage of" law enforcement entities "into doubt." [*Pennsylvania Dep't of Corr. v. Yeskey*, 524 U.S. 206, 209, (1998).] Accordingly, law enforcement agencies fall within the ADA's comprehensive definition of a public entity.

The statutory text further demonstrates that law enforcement entities are subject to Title II's antidiscrimination mandate with respect to all of their operations, including arrests …
\*\*\*
The legislative history confirms that Congress contemplated that Title II would apply to law enforcement operations generally, and to arrests in particular. …
\*\*\*
The administrative implementation of Title II also supports this reading.

The views of the Department of Justice are in accord with decisions by the Courts of Appeals for the Third, Fourth, Eighth, Ninth, Tenth, and Eleventh Circuits.

In *Haberle v. Troxell*, 885 F.3d 170 (3d Cir. 2018), the Third Circuit held that "police officers may violate the ADA when making an arrest by failing to provide reasonable accommodations for a qualified arrestee's disability, thus subjecting him to discrimination." *Id.* at 180. The Third Circuit concluded "that the ADA can indeed apply to police conduct during an arrest." *Id.*

The Fourth Circuit held in *Seremeth v. Board of County Com'rs Frederick County*, 673 F.3d 333 (4th Cir. 2012), that "the ADA applies to the investigation of criminal conduct." *Id.* at 339. The Eighth Circuit held in *Gorman v. Bartch*, 152 F.3d 907, 913 (8th Cir. 1998) that the ADA "must be interpreted broadly to include the ordinary oper-

ations of a public entity in order to carry out the purpose of prohibiting discrimination" *id.* at 913, and applied the statute to transportation of an arrestee. *Id.*

In *Sheehan v. City and County of San Francisco*, 743 F.3d 1211 (9th Cir. 2014) *rev'd in part on other grounds* 135 S. Ct. 1765 (2015), the Ninth Circuit "join[ed] the majority of circuits that have addressed the issue [to] hold that Title II of the Americans with Disabilities Act applies to arrests."[4] 743 F.3d at 1217.

In *Gohier v. Enright*, 186 F.3d 1216, 1221 (10th Cir. 1999), the Tenth Circuit "clarifie[d] that a broad rule categorically excluding arrests from the scope of Title II … is not the law." *Id.* at 1221. *Cf. Clark v. Colbert*, 895 F.3d 1258, 1265 (10th Cir. 2018) (reading *Gohier* as not "squarely [holding] the ADA applies to arrests").

The Eleventh Circuit applied the ADA to arrests, focusing on "whether, given criminal activity and safety concerns, any modification of police procedures is reasonable before the police physically arrest a criminal suspect, secure the scene, and ensure that there is no threat to the public or officer's safety." *Bircoll v. Miami-Dade County*, 480 F.3d 1072, 1085 (11th Cir. 2007).

Although "no circuit has found Title II of the ADA wholly inapplicable to ad hoc police encounters," *Gray v. Cummings*, 917 F.3d 1, 16–17 (1st Cir. 2019), Skokie asks the Court to adopt this outlier position, (ECF No. 105 at 8-13), relying on a single appellate decision, *Hainze v. Richards*, 207 F.3d 795 (5th Cir. 2000). The Fifth Circuit, however, has limited the holding of *Hainze* to exigent circumstances. *Windham v. Harris County*, 875 F.3d 229, 235 (5th Cir. 2017).

---

[4] The Supreme Court ruling in *Sheahan* left intact the Ninth Circuit's decision on the ADA claims. *See Vos v. City of Newport Beach,* 892 F.3d 1024, 1036 (9th Cir. 2018).

In *Hainze*, police officers responded to a call about a person who "had a history of depression and currently was under the influence of alcohol and anti-depressants, carrying a knife, and threatening to commit suicide or 'suicide by cop.'" *Hainze v. Richards*, 207 F.3d 795, 797 (5th Cir. 2000). The officers found the person with a "knife in his hand." *Id.* One of the officers fired two shots at the suspect after he ignored instructions to stop but continued to approach that officer. *Id.* The Fifth Circuit held "that Title II does not apply to an officer's on-the-street responses to reported disturbances or other similar incidents, whether or not those calls involve subjects with mental disabilities, prior to the officer's securing the scene and ensuring that there is no threat to human life." *Id.* at 801. Rather than holding that the ADA does not apply to "arresting, holding, and/or detaining persons," *Hainze* is a case "indicating that arrestees may state cognizable ADA claims under Title II." *Bircoll v. Miami-Dade County*, 480 F.3d 1072, 1083 (11th Cir. 2007). The Fifth Circuit has subsequently applied the ADA in a case with no exigent circumstances, explicitly stating that the ADA allows "individuals to sue local governments for disability discrimination committed by police in non-exigent circumstances." *Windham v. Harris County*, 875 F.3d 229, 235 (5th Cir. 2017); *see also id* at 235 n.4 (referring to "the exigent-circumstances exception to Title II we created in *Hainze*").

The officers in this case, unlike the officers in *Hainze*, did not respond to a disturbance or to an exigent circumstance. Plaintiff, a 69-year-old physically frail woman, who was unarmed and peaceably awaiting the police in her home, cannot be compared to the knife-wielding suicidal person in *Hainze*. This case involved nothing

like the "10-15 minute struggle" between the arrestee and the officers that presented exigent circumstances in *Sallenger v. City of Springfield*, 2005 WL 2001502, at *31 (C.D. Ill. 2005), *aff'd after trial*, 630 F.3d 499 (7th Cir. 2010). (ECF No. 104 at 14-15.)

The officers in this case went to plaintiff's home in response to her complaint (which the officers believed was delusional) about misconduct by her neighbor. Plaintiff was alone in her home when the officers coaxed her outside and, in contrast to *Hainze*, plaintiff never presented any "threat to human life." *Hainze*, 207 F.3d at 801.

Skokie misreads the record in asserting that this case involves "on the street responses to reported disturbances or other incidents." (ECF No. 105 at 13.) There may have been a disturbance four days earlier, when plaintiff was loudly accusing her neighbor of having stolen her sunglasses. But any exigency had long since dissipated and there was no need for any emergency action. The Court should therefore reject Skokie's argument that the ADA does not apply to "arresting, booking, and/or holding suspects." (ECF No. 105 at 8-13. The same is true for Skokie's other challenge to plaintiff's ADA claim, discussed below.

### IV. Perceived Disability

Skokie is disingenuous in asserting that it did not perceive plaintiff as mentally disabled. (ECF No. 105 at 13-15.) Plaintiff enumerates 39 interactions in paragraph 3 of her Statement of Additional Facts she had with Skokie police officers between August 19, 2014 and August 1, 2015 that leave no doubt that Skokie perceived plaintiff as delusional. As set out in paragraph 3(v) of Plaintiff's Additional Facts:

v) The police reports prepared on the 19 visits enumerated above also include references to the officers' belief that plaintiff required medical attention:

     i.      "I asked Ravenna if she would like to speak with a doctor." (ECF No. 103 at 73, Plaintiff's Group Exhibit 21 at 3.)

     ii.     "Joan does suffer from a mental illness and constantly calls the police about the neighbor living in her home." (ECF No. 103 at 74, Plaintiff's Group Exhibit 21 at 4.)

     iii.    Plaintiff's has been diagnosed "as being delusional." (ECF No. 103 at 75, Plaintiff's Group Exhibit 21 at 5.)

     iv.    Plaintiff "refuses to seek medical for a mental evaluation." (ECF No. 103 at 76, Plaintiff's Group Exhibit 21 at 6.)

     v.     "She was once again advised of Social Services and advised to consult her personal physician for a mental evaluation." (ECF No. 103 at 77, Plaintiff's Group Exhibit 21 at 7.)

     vi.    "Joan has refused to seek medical for a mental evaluation." (ECF No. 103 at 78, Plaintiff's Group Exhibit 21 at 8.)

     vii.   "Ravenna refused medical attention." (ECF No. 103 at 79, Plaintiff's Group Exhibit 21 at 9.

     viii.  Plaintiff "refused to seek medical for a mental evaluation." (ECF No. 103 at 80, Plaintiff's Group Exhibit 21 at 10.);

     ix.    Plaintiff "declined to go to hospital." (ECF No. 103 at 81, Plaintiff's Group Exhibit 21 at 11.)

     x.     "Ravenna declined to go to the hospital." (ECF No. 103 at 82, Plaintiff's Group Exhibit 21 at 12.)

     xi.    "Joan suffers from a mental disorder and calls SPD at least once a week." (ECF No. 103 at 84, Plaintiff's Group Exhibit 21 at 14.)

     xii.   "Joan has refused to seek medical for a mental evaluation." (ECF No. 103 at 85-86, Plaintiff's Group Exhibit 21 at 15, 16.)

The ADA includes within its definition of disabled persons those "(c) being regarded as having such an impairment." 42 U.S.C. § 12132(1)(C). The undisputed facts show that Skokie regarded plaintiff as having an impairment. The Court should reject Skokie's argument to the contrary.[5]

---

[5] Defendant cites *Thomas v. Dart*, N.D.Ill. 17-cv-4233, a case discussing pleading standards. (ECF No. 105 at 16.) The relevance of this case is unclear. The plaintiff in *Thomas* initially failed to allege sufficient facts in his ADA claim, 2018 WL 4016315 (N.D. Ill. August 22, 2018), but cured this pleading deficiency in an amended complaint, 2019 WL 1932589 (N.D. Ill. April 30, 2019).

## V. Discrimination and Failure to Accommodate

Skokie officers arrested plaintiff because she continued to make what they believed to be delusional complaints. (Plaintiff's Additional Facts, ¶¶ 7-8.) Rather than follow Skokie's procedures for "dealing with the mentally ill," (Plaintiff's Additional Facts, ¶¶ 27-28), the officers coaxed plaintiff out of her home at 2:30 a.m. and then, in the absence of any exigency, subjected her to a full custodial arrest for an alleged disorderly conduct incident that had occurred four days before. (Plaintiff's Additional Facts, ¶¶ 12-13, ¶¶ 15-18, ¶ 10.) The officers could have accommodated plaintiff's perceived disability by using the summons or notice to appear procedures authorized by Illinois law. (Plaintiff's Additional Facts, ¶ 24.) Commander Libit could have also accommodated plaintiff's perceived disability by ordering her release on a personal recognizance bond, but did not because he wanted plaintiff to be held in custody for a "behavioral analysis." (Plaintiff's Additional Facts, ¶ 20.) The Court should therefore reject Skokie's assertion that plaintiff fails "identify what, if any service, program, or activity she was eligible to receive from the Village of Skokie." (ECF No. 101 at 15.)

## VI. Deliberate Indifference

Skokie asks the Court to require plaintiff to prove that Skokie had the specific intent to violate the ADA. (ECF No. 101 at 18-21.) The Seventh Circuit rejected this standard of proof in *Lacy v. Dart*, 897 F.3d 847, 863 (7th Cir. 2018) in favor of "deliberate indifference."

Skokie admits that it does not have any "procedural differences for arresting people with disabilities compared to people without disabilities" because it believes "that the protections of the ADA did not apply in cases of arresting, booking, or holding a suspect." (ECF No. 105 at 4.) But Skokie has acknowledged its duty under the ADA when it adopted General Order F-80, "Dealing with the Mentally Ill." (Plaintiff's Additional Facts, ¶ 27.) The General Order instructs police officers to "not threaten the person with an arrest," but to "explain first that you need to talk to them further at the police station." (Plaintiff's Additional Facts, ¶ 28.) Neither Commander Libit nor Chief Scarpelli was aware of this policy. (Plaintiff's Additional Facts, ¶¶ 29-30.) These facts along with Skokie's wholesale denial that the law applies establish deliberate indifference and meet the plaintiff's lesser burden of showing that there is enough evidence from which a jury could find deliberate indifference.

### VII. Qualified Immunity

Skokie asserts that it is entitled to qualified immunity. (ECF No. 105 at 17-18.) The Seventh Circuit squarely rejected this argument in *Walker v. Snyder*, 213 F.3d 344, 346 (7th Cir. 2000): "Qualified immunity is a personal defense, which does not apply to institutional defendants in suits under federal statutes. *Owen v. Independence*, 445 U.S. 622 (1980)."

## VIII. Conclusion

The Court should therefore deny Skokie's motion for summary judgment.

Respectfully submitted,

/s/ <u>Kenneth N. Flaxman</u>
Kenneth N. Flaxman
ARDC No. 830399
Joel A. Flaxman
200 S Michigan Ave, Ste 201
Chicago, IL 60604
(312) 427-3200

*attorneys for plaintiff*